**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BRIAN MOORE, | : | PRISONER CASE NO. |
| Petitioner, | : | 3:10-cv-726(JCH) |
| | : | |
| v. | : | |
| | : | |
| CHAPDELAINE, WARDEN, | : | MARCH 8, 2012 |
| Respondent. | : | |

**RULING RE: PETITION FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)**

**I.     INTRODUCTION**

The petitioner, Brian Moore, an inmate confined at Osborn Correctional

Institution in Somers, Connecticut, brings this action pro se for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  He challenges his conviction for attempted murder and

assault in the first degree.  For the reasons set forth below, the Petition is denied.

**II.     FACTUAL BACKGROUND**

The Connecticut Appellate Court determined that the jury reasonably could have

found the following facts.

> In early 1997, [Moore] sold two bulletproof vests, or the
> components thereof, to the victim, Glaister Gopie.
> Subsequently, the victim attempted, on many occasions, to
> return one of the vests for a refund. On the evening of May
> 18, 1997, the victim and his cousin, Andrew Mitchell, drove
> to Circular Avenue in Waterbury and parked on the street
> near a friend's home. The victim, coincidentally, parked
> directly outside the home of [Moore's] half-sister, Crystal
> Bolton. Sometime earlier that day, [Moore] and his girlfriend
> had driven to Circular Avenue to visit Bolton. As [Moore] left
> Bolton's home and as the victim approached his friend's
> home, the two men encountered each other. The victim then
> confronted [Moore] about the desired refund.
>
> From that point, the confrontation escalated into a fistfight, in
> which the victim was the apparent victor. After the fight
> ended, [Moore] retrieved a loaded .38 caliber revolver from
> his car. [Moore] then shot at the victim twice. The victim ran,

fell to the ground shortly thereafter and was found by police
lying face down with a single gunshot wound in the middle of
his lower back. The victim told an officer that [Moore] had
shot him. Subsequently, the police arrested [Moore].

State v. Moore, 69 Conn. App. 117, 118-19 (2002).

## III.   PROCEDURAL BACKGROUND

On June 30, 1997, pursuant to an arrest warrant signed on May 19, 1997,

charging Moore with attempt to commit murder in violation of Connecticut General

Statutes §§ 53a-49 and 53a-54a, an Inspector from the Connecticut State's Attorney's

Office and a Waterbury Police Officer extradited Moore from Fairfax, Virginia, and

brought him back to the Waterbury Police Department.  A Superior Court Judge

arraigned Moore on July 1, 1997.   On October 5, 1999, an Assistant State's Attorney

for Connecticut Superior Court for the Judicial District of Waterbury, Geographical Area

14, filed a substitute long-form information charging Moore with one count of attempted

murder in violation of  Connecticut General Statutes §§  53a-49(a)(2) and 53a-54a(a),

one count of assault in the first degree in violation of Connecticut General Statutes §

53a-59(a)(1), and one count of assault in the first degree in violation of  Connecticut

General Statutes § 53a-59(a)(5).  On October 25, 1999, a jury found Moore guilty of all

charges.  See Mem. Opp'n Pet. Writ Habeas Corpus, App. B.  On December 6, 1999, a

judge sentenced Moore to a total term of imprisonment of eighteen years.  See Moore,

69 Conn. App. at 119.

On direct appeal, Moore claimed that the trial court should have declared a

mistrial due to the prosecutor's improper disclosure of prejudicial matters to the jury

through his questioning of Moore regarding a prior felony conviction in violation of the

court's ruling on a motion in limine and the prosecutor's introduction of facts that were

not in evidence during his closing summation in an effort to appeal to the passions of the jury.  The Connecticut Appellate Court affirmed the judgment of conviction, and the Connecticut Supreme Court denied certification to appeal further.  See Moore, 69 Conn. App. at 130, cert. denied, 260 Conn. 941 (2002).

On February 13, 2003, Moore filed a petition for writ of habeas corpus in the Connecticut Superior Court for the Judicial District of Tolland at Rockville.  In December 2007, Moore filed a second amended petition asserting claims of ineffective assistance of trial and appellate counsel, errors on the part of the trial court in instructing the jury, and multiple instances of prosecutorial misconduct.  See Mem. Opp'n Pet. Writ Habeas Corpus, App. S, Second Amended Petition.

At a hearing held in December 2007, Moore's trial attorney, who had also been his appellate attorney, offered testimony.  In addition, another attorney provided testimony as to the effectiveness of Moore's trial and appellate counsel.  On February 13, 2008, the court denied the petition for writ of habeas corpus.  See Moore v. Warden, No. CV030823717, 2008 WL 590507 (Conn. Super. Ct. Feb. 13, 2008).

Moore raised four issues on appeal.  He argued that the habeas court had erred in: (1) denying the petition for certification to appeal; (2) concluding that he had not met his burden of demonstrating that trial counsel had been ineffective in failing to object to the trial court's instruction to the jury that Moore had used deadly force and that appellate counsel had been ineffective in failing to raise this issue on appeal; (3) concluding that he had not met his burden of demonstrating that trial counsel had been ineffective in failing to object to the trial court's instructions to the jury on intent and that appellate counsel had been ineffective in failing to raise this issue on appeal; (4)

concluding that he had not met his burden of demonstrating that trial counsel had been ineffective in failing to object to the trial court's repeated use of the word victim with regard to the complaining witness and that appellate counsel had been ineffective in failing to raise this issue on appeal; and (5) concluding that he had not met his burden of demonstrating that trial counsel had been ineffective in presenting the issue of prosecutorial misconduct at trial and appellate counsel had been ineffective in presenting the issue of prosecutorial misconduct on appeal.  See Mem. Opp'n Pet. Writ Habeas Corpus, App. S, Notice of Appeal.

On March 2, 2010, the  Connecticut Appellate Court affirmed the decision of the habeas court.  See Moore v. Commissioner of Correction, 119 Conn. App. 530 (2010). On April 14, 2010, the Connecticut Supreme Court denied certification to appeal further. See Moore v. Commissioner of Correction, 296 Conn. 902 (2010).

## IV.    STANDARD OF REVIEW

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an
        unreasonable determination of the facts in light of the
        evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Clearly established federal law is found in holdings, not dicta, of

the Supreme Court at the time of the state court decision.  See Carey v. Musladin, 549

U.S. 70, 74 (2006).  The law may be a generalized standard or a bright-line rule

intended to apply the standard in a particular context.  Kennaugh v. Miller, 289 F.3d 36,

42 (2d Cir.), cert. denied, 537 U.S. 909 (2002).

     A decision is "contrary to" clearly established federal law where the state court

applies a rule different from that set forth by the Supreme Court, or if it decides a case

differently than the Supreme Court on essentially the same facts.  Bell v. Cone, 535

U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the

court has correctly identified the governing law, but unreasonably applies that law to the

facts of the case, or refuses to extend a legal principle clearly established by the

Supreme Court to circumstances intended to be encompassed by the principle.  See

Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 129 S. Ct. 1312 (2009).

The state court decision must be more than incorrect; it also must be objectively

unreasonable, which is a substantially higher standard.  See Schriro v. Landrigan, 550

U.S. 465, 473 (2007).

     When reviewing a habeas petition, the federal court presumes that the factual

determinations of the state court are correct.  The petitioner has the burden of rebutting

that presumption by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Cullen

v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings

where constitutional claims have been considered on the merits is highly deferential and

5

difficult for petitioner to meet).  In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  See id.

## V.     DISCUSSION

Moore challenges his conviction on four grounds: (1) the trial court erred in its instructions to the jury; (2) prosecutorial misconduct deprived him of his right to a fair trial; (3) his counsel failed to request proper jury instructions on intent,  failed to object to improper instructions given by the trial court, and failed to object to additional instances of prosecutorial misconduct; and (4) his counsel failed to properly select and brief issues on appeal.  See Pet. Writ Habeas Corpus at 9-15.  The respondent argues that the first ground and part of the second ground are procedurally defaulted and that part of the second, and the third and fourth, grounds should be denied because the court decisions on these grounds were neither contrary to nor an unreasonable application of clearly established federal law.  Because the issues relating to the ineffective assistance of both trial and appellate counsel essentially mirror each other, the court considers the claims of ineffective assistance of trial and appellate counsel together.

A.     Ineffective Assistance of Trial and Appellate Counsel

Moore argues that his trial counsel, who was also his appellate counsel, was ineffective because he: (1) failed to object to the trial court's jury instructions on intent and failed to raise the issue on direct appeal;  (2) failed to object to the trial court's use of the term "victim" in its jury instructions and failed to raise the issue on appeal; and (3) failed to object to certain instances of prosecutorial misconduct and failed to brief these instances of prosecutorial misconduct on direct appeal.  Moore also claims that counsel

6

was ineffective in failing to raise on appeal the issue of the trial court's refusal to include an instruction to the jury on non-deadly force.

An ineffective assistance of counsel claim is reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail, Moore must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to him.  Id. at 687-88.  Counsel is presumed to be competent.  Thus, Moore bears the burden of demonstrating unconstitutional representation. See  United States v. Cronic, 466 U.S. 648, 658 (1984).  To satisfy the prejudice prong of the Strickland test, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial.  Strickland, 466 U.S. at 694.  The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions.  See Rompilla v. Beard, 545 U.S. 374, 381 (2005).  To prevail, a petitioner must demonstrate both deficient performance and sufficient prejudice.  See Strickland, 466 U.S. at 700.  Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

1.      Instructions on Intent

Moore contends that counsel was ineffective in failing to request the trial judge to instruct the jury on the elements of the three crimes with which he was charged and in failing to object to or raise on appeal the trial judge's instructions to the jury on intent, which Moore asserts included inapplicable language that may have misled the jury.

7

In analyzing this claim, the Connecticut state courts applied the standard established in Strickland.  Because they applied the correct legal standard, the state court decisions cannot meet the "contrary to" prong of section 2254(d)(1).

The habeas judge reviewed the jury instructions on intent and conceded that the instructions "were imperfect."  Moore, 2008 WL 590507, at *2.  The court noted, however, that counsel testified at the habeas hearing that he did not contest the elements, including intent, of the crimes for which Moore had been charged because his strategy during trial had been to rely on the theory of self-defense.  Id.  Counsel recognized that, when arguing a theory of self-defense, a defendant essentially admits to engaging in the criminal conduct at issue but contends that the conduct was legally justified.  See id.  The habeas court acknowledged that counsel's decision not to submit a request to charge or challenge the trial court's instructions on the elements of the three crimes with which Moore had been charged, but rather to argue that the prosecutor had not disproved self-defense beyond a reasonable doubt, was "true to his strategy."  Id.  The habeas court concluded that there was no strategic reason for counsel to object to the trial court's instructions on intent, because Moore's intent to cause death or serious physical injury was not in dispute in the case.  Id.  Thus, the strong presumption that counsel's decision not to challenge the instructions on intent was made in the exercise of reasonable professional judgment was not overcome.  The habeas judge also concluded that Moore did not prove that the outcome of the trial would have been different had the judge issued better instructions on intent.  Id. at 3.  Thus, Moore also failed to meet the prejudice prong of the Strickland test.

The Connecticut Appellate Court agreed with the habeas court's conclusion that

counsel's decision not to challenge the instructions on intent was consistent with counsel's trial strategy of focusing on the theory of self-defense, which inherently concedes intent.  See Moore, 119 Conn. App. at 539-40.  Thus, the Appellate Court determined that counsel's performance at trial did not fall below the objective standard of reasonableness.  Id.

The Appellate Court found that counsel's failure to challenge the intent instructions on appeal also did not suffice to establish ineffective assistance.  Id. at 540. The Appellate Court noted that appellate counsel need not argue every conceivably meritorious claim on appeal, but may select for review only those claims that he or she considers to be the strongest.  Id.; see also Jones v. Barnes, 463 U.S. 745, 751 (1983) (appellate counsel need not raise every non-frivolous argument requested by a criminal defendant, as long as the decision not to do so is based on sound professional judgment); Smith v. Murray, 477 U.S. 527, 536 (1986) (important part of appellate advocacy is "winnowing out weaker arguments on appeal and focusing on those more likely to prevail") (internal quotation marks and citation omitted).  Thus, the Appellate Court concluded that the decision not to raise the issue of the trial court's intent instruction on appeal fell within the competence of ordinary professionals.  See id. at 540.  Upon review, this Court concludes that the state courts reasonably applied Supreme Court law in their consideration of this claim.

2.     Use of the Word Victim

Moore claims that counsel was ineffective in failing to object to the trial court's reference to the word victim to describe the individual who was shot by Moore and also in failing to raise this issue on appeal.  Both the habeas court and the appellate court

9

noted that, under appellate case law at the time of trial and appeal, the issue of a court or prosecutor using the word victim in a criminal trial involving a defense of self-defense was a novel one.  "[I]t was not until 2004, after [Moore's] trial and direct appeal . . . that the [Connecticut] Appellate Court" reversed a conviction because the trial judge had used the word victim in his instructions to the jury over eighty times.  Moore, 2008 WL 590507, at *3 (citing State v. Cortes, 84 Conn. App. 70 (2004), aff'd 276 Conn. 241 (2005)).  The Connecticut Appellate Court concluded that habeas court had correctly determined that trial and appellate counsel's failure to raise a legal theory that had "not yet been accepted" by the appellate courts as "a valid basis for a meritorious claim" could not constitute deficient performance.  Moore, 119 Conn. App. at 542.  Thus, Moore had failed to establish that counsel's performance met the first prong of Strickland.  Upon review, this court concludes that the state courts reasonably applied the standard set forth in Strickland in their consideration of this claim.

> 3.     Additional Instances of Prosecutorial Misconduct

Moore argues that counsel failed to object to certain instances of prosecutorial misconduct at trial and failed to brief this issue on appeal.  The habeas court acknowledged that the counsel had objected to several instances of alleged prosecutorial misconduct during trial relating to the prosecutor's reference to a prior felony committed by Moore and to statements made by a witness who did not testify at trial.  Moore, 2008 WL 590507, at *3.  These instances of alleged prosecutorial misconduct were also raised by counsel on appeal.  Id. at *7.

Moore claimed that there were five other instances of alleged misconduct by the

prosecutor during closing argument and during jury selection.[1]  The habeas court

examined each instance and found that there was no valid basis for counsel to have

objected to any of the statements made by the prosecutor.  Moore, 2008 WL 590507, at

*3-4.

In addition, the court credited counsel's testimony at the habeas hearing

regarding the potential consequences of objecting to every instance of alleged

prosecutorial misconduct.  The habeas court noted that, if counsel had repeatedly

raised objections on weak grounds, he would have risked alienating the jurors and

damaging his credibility with the judge.  See id. at *5.  Because counsel adopted a

"legitimate strategy to deal with possible prosecutorial misconduct and . . . implemented

it competently," the habeas court concluded that Moore had not overcome the

presumption that counsel's conduct constituted an "exercise of reasonable professional

judgement."  Id. (internal quotation marks and citation omitted).

The Connecticut Appellate Court agreed that the decision by counsel not to

object to every possible instance of misconduct on the part of the prosecutor was

reasonable and "aligned with his overall strategy in trying and appealing this case."

Moore, 119 Conn. App. at 543.  The Appellate Court concluded that counsel's "omission

---

[1]     In the first and second instances of alleged misconduct, the prosecutor made the
following statements in his closing argument:  (1) "Justice in this case demands that the truth be
found . . . . And when you come back and render your verdict of guilty, justice will be done in
this case"; and (2) "Glaister ran in fear of his life and it's only by the luck of God that he's not
paralyzed or dead right now because the defendant tried to kill him and he almost did it."  In the
third and fourth instances of alleged misconduct, the prosecutor referred to facts that Moore
contended were not in evidence when he argued to the jury (1) that Moore "fled the scene when
he heard sirens approaching," and (2) that "[he could cite] over ten different things that [Moore]
did that [showed he was] guilty." In the fifth instance of alleged misconduct, "the prosecutor
apparently introduced Gopie as 'the victim' to each venire panel from which the parties selected
jurors."  Moore, 2008 WL 590507, at *3-4.

of other instances . . . of prosecutorial impropriety [on appeal] was within the purview of his discretion as appellate counsel and [did] not fall below an objective standard of reasonableness."  Id. at 543-44.  Tactical decisions of trial counsel are not properly dissected on review of a federal habeas petition.  See Rompilla, 545 U.S. at 381 (court affords "a heavy measure of deference to counsel's judgments").  Upon review, this court concludes that the state courts reasonably applied the standard set forth in Strickland in their consideration of this claim.

          4.       Instruction on Non-Deadly Force

     Moore contends that in the appeal of his conviction, counsel failed to raise the issue of the trial court's refusal to include an instruction to the jury the use of non-deadly force.  The habeas court acknowledged that counsel had submitted a request to charge seeking instructions on self-defense regarding the use of deadly force and non-deadly force.  During his charge to the jury, the trial judge instructed the jurors that Moore had used deadly force and that "the only issue for them to consider was whether the use of such force was justified self-defense under the heightened requirements applicable to the use of deadly physical force."  Moore, 2008 WL 590507, at *6 (citation omitted).  Thus, the trial judge only instructed the jury on self-defense regarding the use of deadly force.

     The habeas court concluded that "the petitioner conceded that he used deadly force against [the victim] as part of his trial strategy to show that the use of such force was justified self-defense."  Id.  The habeas court concluded that there was no basis for trial or appellate counsel to challenge the instructions on self-defense because the instruction on the use of deadly force "simply tracked the petitioner's theory of defense."

Id.  Thus, the habeas court determined that Moore failed to meet the deficient performance prong of the Strickland test.

The habeas court also considered whether Moore had met the prejudice prong of Strickland standard.  The habeas court concluded that Moore had not shown that he had suffered prejudice from counsel's allegedly deficient performance because there was no reasonable probability that, had counsel challenged the instructions on self-defense, the trial verdict would have been different or the Appellate Court would have overturned the conviction on appeal.  See id. at *7.

The Connecticut Appellate Court reviewed all the evidence presented at trial and determined that there was no "foundation from which the jury could reasonably conclude that the petitioner used nondeadly force." Moore, 119 Conn. App. at 537.  The Appellate Court noted that, due to the fact that Moore had conceded that he had shot at the victim, "a jury instruction on nondeadly force would have been a factually unsupported instruction."  Id. at 538.  Because it was within counsel's discretion not to raise an unsupported claim on appeal, the Appellate Court concluded that counsel's performance did not fall below the objective standard of reasonableness.  See id.  The failure to raise a meritless claim on appeal cannot be deficient performance.  See United States v. Arena, 180 F.3d 380, 396-97 (2d Cir. 1999), cert. denied, 531 U.S. 811 (2000). Thus, the Appellate Court determined that Moore failed to meet the first prong of the Strickland test.

Upon review, this court concludes that the state courts reasonably applied Supreme Court law in their consideration of this claim.  Accordingly, the Petition is denied on this ground.

13

B.      Procedurally Defaulted Claims Regarding Jury Instructions and Instances
        of Prosecutorial Misconduct

The respondent argues that Moore's claim that the trial court erred in its

instructions to the jury (ground one of the Petition) and his claim that certain instances

of prosecutorial misconduct deprived him of his right to a fair trial (part of ground two of

the Petition) should be dismissed as having been procedurally defaulted because they

were not raised on direct appeal of Moore's conviction.  Moore responds that this

argument is without merit.

A prerequisite to habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion

of available state remedies.  See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28

U.S.C. § 2254(b)(1)(A).  The exhaustion requirement "is designed to give the state

courts a full and fair opportunity to resolve federal constitutional claims before those

claims are presented to the federal courts."  See O'Sullivan, 526 U.S. at 845.  The

Second Circuit requires the district court to conduct a two-part inquiry.  First, a petitioner

must present "the essential factual and legal premises of his federal constitutional claim

to the highest state court capable of reviewing it."  Cotto v. Herbert, 331 F.3d 217, 237

(2d Cir. 2003) (citation omitted).  Otherwise, the state courts will not have had an

opportunity to correct the alleged errors.  See O'Sullivan, 526 U.S. at 845 (if petitioner

raises different factual issues under the same legal theory he is required to present

each factual claim to the highest state court in order to exhaust his state remedies).

Second, he must have utilized all available means to secure appellate review of his

claims.  He cannot wait until appellate remedies no longer are available and argue that

the claim is exhausted.  See Galdamez v. Keane, 394 F.3d 68, 73-74 (2d Cir.), cert.

denied, 544 U.S. 1025 (2005).

14

To address the possibility that an inmate would exhaust his claims simply by letting the time run on state remedies, the Supreme Court created the procedural default doctrine. See O'Sullivan, 526 U.S. at 853. When an inmate has exhausted his state remedies but has not given the state courts a fair opportunity to consider his federal claims, the inmate has procedurally defaulted his claims and is ineligible for federal habeas relief absent a showing of "cause and prejudice" or "a fundamental miscarriage of justice." Id. at 854 (internal citations omitted).

Here, the only claims raised by Moore on direct appeal were three instances of prosecutorial misconduct. Specifically, Moore argued that the trial court should have declared a mistrial due, first, to the prosecutor's improper disclosure of prejudicial matters to the jury through his questioning of the petitioner regarding a prior felony conviction in violation of the court's ruling on a motion in limine and, second, to the prosecutor's introduction of facts that were not in evidence during his closing summation in an effort to appeal to the passions of the jury. Moore did attempt to raise the first claim of this Petition—instructional errors on the part of the trial judge—and part of the second claim of this Petition—five additional instances of alleged prosecutorial misconduct—in his state habeas petition, but the respondent argued that those claims had been procedurally defaulted. Moore's counsel in the habeas matter argued that the procedural default of those claims resulted from ineffective assistance of trial and appellate counsel.

The habeas court considered the ineffective assistance of counsel claims and denied those claims. Thus, the court found no cause to excuse the procedural default of the instructional error and additional prosecutorial misconduct claims. See Moore,

2008 WL 590507, at *1.  Moore did not raise the procedurally defaulted claims on appeal from the denial of his state habeas petition.

In his Reply to the respondent's argument that the instructional error and additional prosecutorial misconduct claims are procedurally defaulted, Moore again raises ineffective assistance of trial and appellate counsel as cause to excuse the default.  In addition, Moore claims that this court's refusal to review these claims will result in a miscarriage of justice involving the conviction of one who is actually innocent.

To establish cause to excuse procedural default, petitioner must identify "some external impediment preventing counsel from constructing or raising the claim."  Murray v. Carrier, 477 U.S. 478, 492 (1986).  Such factors include interference by state officials impeding compliance with state rules or a showing that the factual or legal basis for a claim was not reasonably available to defense counsel.  See McCleskey v. Zant, 499 U.S. 467, 493-94 (1991).  Moore contends that his failure to present these claims on direct appeal was due to errors on the part of his attorney.

Ineffective assistance of counsel can constitute cause for failing to comply with a State's procedural rule.  See Murray, 477 U.S. at 488.  "Attorney error short of ineffective assistance of counsel, [however], does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial."  Id. at 492.  A claim of ineffective assistance must be raised in a state court proceeding as an independent claim before a petitioner may attempt to use it  to establish cause for a procedural default."  See id. at 489.   Thus, a petitioner must have properly presented and exhausted the ineffective assistance of counsel claim in state court before it will be considered as cause to excuse procedural default.  See Edwards v. Carpenter, 529

16

U.S. 446, 453 (2000).

Moore did raise his ineffective assistance of trial and appellate counsel claims in state court.  As indicated above, the Connecticut Superior and Appellate Courts concluded that Moore had not met his burden of demonstrating that trial and appellate counsel had performed below the objective standard of reasonableness established by prevailing professional norms or that counsel's deficient performance caused prejudice to him.

Moore has raised those same claims of ineffective assistance of counsel in the present Petition.  This court has reviewed Moore's claims of ineffective assistance of trial and appellate counsel and does not find that counsel's representation was constitutionally ineffective at either stage of the case.  Because Moore has not shown that counsel's performance fell below an objective standard of reasonableness, he cannot show cause to excuse his procedural default of the claims of instructional error and additional instances of prosecutorial misconduct.

Nor can Moore show that failure to consider these claims would result in a fundamental miscarriage of justice, that is, "the conviction of one who is actually innocent."  Murray, 477 U.S. at 496.  To meet this exception, Moore must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  Schlup v. Delo, 513 U.S. 298, 316 (1995).  To establish a credible claim of actual innocence, a petitioner must support his claim "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  Id. at 324.

17

Actual innocence requires a showing of factual innocence, not "legal innocence." Sawyer v. Whitley, 505 U.S. 333, 339 (1992).

Moore contends that the trial court errors permitted the jury to find him guilty even though he acted in self-defense. A claim that one's conduct was justified by the doctrine of self-defense is a claim of legal innocence, not actual innocence. See Ellis v. Hargett, 302 F.3d 1182, 1186, n.1 (10th Cir. 2002) (finding that actual innocence exception did not apply to petitioner's claim that he was legally innocent because his conduct was justified by the doctrine of self-defense, on which the jury was not accurately instructed); Moleterno v. Nelson, 114 F.3d 629, 636 (7th Cir.1997) (holding that petitioner was not entitled to miscarriage of justice exception to cause and prejudice standard because he asserted that he was legally innocent based on a claim of self-defense as opposed to actually innocent of murder); Garbut v. Conway, 05 Civ. 9898, 2009 WL 2474099, at *2-3 (S.D.N.Y. Aug.12, 2009) (because petitioner made no "claim that he [was] entirely innocent," he failed to meet fundamental miscarriage of justice exception); Galusha v. Duncan, No. 9:02-CV-1602, 2007 WL 4198272 at *14 (N.D.N.Y. Nov. 21, 2007) (declining to review procedurally barred legal sufficiency claim under the fundamental miscarriage of justice claim because, given evidence that petitioner had strangled his victim and "went to great lengths to cover up the crime[,] . . . [t]here c[ould] be no claim of actual innocence").

Furthermore, Moore has not submitted any new evidence that he was innocent of the charges of which he was convicted. Because Moore has not shown cause or a fundamental miscarriage of justice, the claims of instructional error on the part of the trial judge set forth in ground one of the Petition and the five additional instances of

18

alleged prosecutorial misconduct set forth in ground two of the Petition are procedurally defaulted, cannot be reviewed, and are denied.

     C.    <u>Claims of Prosecutorial Misconduct Raised on Appeal</u>

Included in ground two of the Petition are the claims of prosecutorial misconduct that Moore raised on direct appeal of his conviction.  Moore argued that the prosecutor improperly disclosed prejudicial matters to the jury through his questioning of Moore, in violation of the trial judge's ruling on a motion <u>in</u> <u>limine</u>.  Moore also claimed that the prosecutor improperly introduced facts that were not in evidence during his closing argument, in an attempt to appeal to the passions of the jury.

The Supreme Court has held that prosecutorial misconduct does not give rise to a constitutional violation unless the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).  Generally, a prosecutor's remarks that might have been undesirable or even universally condemned do not constitute prejudice amounting to a denial of a defendant's constitutional right to due process.  <u>See</u> <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).  The petitioner is required to identify specific instances of "egregious misconduct," <u>Donnelly</u>, 416 U.S. at 647-48, that show he was substantially prejudiced.  <u>United States v. Thomas</u>, 377 F.3d 232, 244 (2d Cir. 2004).  In evaluating a claim of prosecutorial misconduct, the court considers the prosecutor's remarks in the context of the entire trial "to determine whether the prosecutor's behavior amounted to prejudicial error."  <u>United States v. Young</u>, 470 U.S. 1, 12 (1985).  The court must consider how much of the perceived misconduct was invited by the defense, whether the trial court gave any curative jury instructions, and the strength of the State's case

19

against the defendant.  Darden, 477 U.S. at 181-82.

In analyzing these claims, the Connecticut Appellate Court applied state cases with holdings that mirror the applicable federal law.  See Moore, 69 Conn. App. at 120-21 (citing State v. Jefferson, 67 Conn. App. 249, 266-67 (2001)); compare Jefferson, 67 Conn. App. at 266 ("To deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process.") (internal quotation marks and citations omitted), with Darden, 477 U.S. at 169 ("[T]he relevant question is whether the comment so infected the trial with unfairness as to make the resulting conviction a denial of due process.").  Because the Connecticut Appellate Court applied the correct legal principles, the decision is not contrary to federal law.  See Lurie v. Wittner, 228 F.3d 113, 127 (2d Cir. 2000), cert. denied, 532 U.S. 943 (2001).  Thus, the court considers whether the analysis of the Connecticut Appellate Court was an unreasonable application of federal law.

Moore identified three examples of prosecutorial misconduct. Moore first contended that, prior to trial, he had filed a motion in limine seeking to bar the State from offering evidence pertaining to his 1990 conviction for possession of narcotics. The trial judge ruled that the State could only mention that Moore had been convicted of a crime that carried a penalty of more than one year, but could not mention that it was a narcotics conviction.  During cross-examination, the prosecutor asked Moore three times if he was a convicted felon and also mentioned the fact that Moore was a convicted felon in his closing argument.  See Moore, 69 Conn. App. at 123-25.  Moore contended that these remarks violated the court's order regarding his motion in limine.

20

The Appellate Court reviewed the trial transcripts and determined that, although it appeared that the prosecutor may have skirted the trial court's ruling on the motion in limine, the prosecutor's references to Moore's conviction as a felony during cross-examination and closing argument were not improper.  The court noted that the trial court's ruling on the motion in limine was "not intended to shelter [Moore] from the use of the term 'felony'," but from the use of the name of the crime for which Moore received the felony conviction.  Id. at 124.  The Appellate Court concluded that, through its instruction to the jury to use a prior conviction only in weighing the credibility of Moore's testimony, the trial court had sufficiently addressed any prejudice to Moore due to the prosecutor's references to the word felony.  See id.  Thus, the Appellate Court determined that the claim of prosecutorial misconduct was unavailing.  Considering the prosecutor's references to Moore's prior conviction as a felony conviction in the context of the entire trial, this Court concludes that the determination that no misconduct occurred is a reasonable application of Supreme Court law.

The second and third instances of misconduct occurred during the prosecutor's closing argument.  Moore contended that, during his summation, the prosecutor improperly referred to facts relating to the victim's prior arrest record and to facts relating to a witness who did not testify at trial.

The Connecticut Appellate Court reviewed the trial transcripts and determined that, although the comments by the prosecutor were improper, they did not substantially prejudice Moore.   The Appellate Court noted that the prosecutor's misconduct with regard to his reference to the victim's prior arrest record as involving minor offenses was in part "invited by defense counsel's closing argument because defense counsel

used the arrest [record] to undermine the victim's credibility." Id. at 128.  In view of this fact and the fact that the prosecutor made only two  comments regarding the victim's arrest record within a short period of time, the Appellate Court determined that the misconduct was not severe.  Id.  The Appellate Court noted that the trial judge had issued appropriate curative instructions to the jury that were sufficient to counter the misconduct of the prosecutor.  Id. at 129.  The court further noted that there was no evidence that the jury had disregarded the curative instructions.  Id.  The court concluded that given the strength of the State's case, the prosecutor's remarks about the victim's prior arrest record did not substantially prejudice Moore.  Id.

The Appellate Court was significantly more concerned about the prosecutor's remarks regarding a witness, Crystal Bolton, who had not testified at trial.  Id.  Although other witnesses had testified to Ms. Bolton's presence during the commission of the crime, she did not testify at trial.  Id. at 127 n.3.  The Appellate Court admonished the prosecutor for appealing to the passions or prejudices of the jury.  Id. at 130.  The court determined, however, that the comments by the prosecutor regarding Bolton's actions occurred only during the prosecutor's summation and "were not central to the critical issues of the case."  Id.  In addition, the court noted that the trial court had properly adopted curative measures in its jury instructions which were sufficient to counter the misconduct of the prosecutor.  Id.  The court considered the strength of the State's case and could not conclude that any of the remarks by the prosecutor regarding Crystal Bolton were substantially prejudicial or had infected the trial with such unfairness as to deprive Moore of due process.  Id.

This court concludes that the state court determination that the conduct of the prosecutor during cross-examination of Moore and closing argument was not so egregious as to deprive Moore of a fair trial was a reasonable application of federal law. Accordingly, the Petition is denied on this ground.

## VI.    CONCLUSION

The Petition for Writ of Habeas Corpus (**Doc. No. 1**) is **DENIED**.  Because petitioner has not made a showing of the denial of a constitutional right, a certificate of appealability will not issue.  The Clerk is directed to enter judgment and close this case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 8th day of March, 2012.


    /s/ Janet C. Hall
Janet C. Hall
United States District Judge